# Decisions Court of Appeal, Parish of Orleans

## No. 3245.

(Court of Appeal, Parish of Orleans.)

GEORGE THOMAS, Appellant, vs. GEORGE PRATT, Appellee.

1. A suit in damages for personal injuries, against the owner of a building under reconstruction, by a laborer who fell from scaffolding he charges was defectively constructed and the cause of his injuries, will not prevail where the proof shows that the scaffolding was erected by independent contractors; was properly put up, was sound and used with perfect safety for the purposes intended (to wheel bricks in barrows to the bricklayers) before and after the accident.

2. And where the proof further shows that the injuries claimed by plaintiff who was inexperienced at scaffolding work, but without remonstrance or protest assumed the risk, were the result of his unskillfulness and negligence.

Appeal from Civil District Court Division C.

Branch K. Miller, for Plaintiff and Appellant.

Farrar, Jonas & Kruttschnitt, for Defendant and Appellee.

BEAUREGARD, J. The question in this case is whether or not the defendant is liable in damages or whether plaintiff did not mistake his true debtors and should not have brought his suit against the defendant's contractors who he urges, stand in the light of independent contractors and are alone answerable if at all for the damages claimed.

The Decree of the Court a qua rejected plaintiff's demand and he appeals.

It seems that on March 8, 1901, the defendant as the owner of, and to rebuild the St. Charles Theatre, which had been destroyed, entered into a certain contract with the firm of Cobb & Leblanc to rebuild the walls of the said Theatre. The main features of the contract, the execution of which was entrusted, in accordance with their plans and specifications to the supervision of defendant's architects, Favrot & Livaudais are as follows:

The contractor * * * * shall and will provide all the materials and perform-all the work, mentioned in the specifications, * * * * for the furnishing of all labor as follows:

1. All labor for the laying of all bricks, erecting of scaffold, mixing of mortar and in fact all labor incidential to complete entirely all brick masonry including pressed bricks.

Nos. 2 and 3 which follow are not of moment, and

Further: that " should the contractor at any time refuse or " neglect to supply a sufficiency of properly skilled workmen or of " materials of the proper quality or fail in any respect to prose- " cute the work * * * * * the owner shall be at liberty after one " day's written notice to the contractor to provide any such labor " or materials * * * * * and if the architects shall certify that such " refusal, neglect or failure is sufficient ground for such action, the " owner shall be at liberty to terminate the employment of the con- " tractor for said work and to enter upon the premises and take " possession to complete the work comprehended under his con- " tract * * * * * etc.

On June 23, 1901, the plaintiff whilst occupied as a laborer, on the scaffolding surounding the brick walls then in course of erection, in wheeling and delivering bricks from a barrow loaded with same, suddenly fell (with the barrow) from said scaffolding to a projecting railing some 16 or 18 feet below where his fall was checked.

Removed from there to the ground some 23 or 25 feet below in an unconsciuos condition, he was taken to the hospital where he remained some 30 days; thereafter 10 days at home and subsequently compelled to use crutches, then a walking stick for some time. Attributing his personal injuries to the fault, neglect and vice in construction of said scaffolding to the owner (and defendant in this case) of the St. Charles Theatre plaintiff sues the said owner alone for $2000 damages.

The responsibility of the owner of a building, the defect in which has been the cause of injury to others, is settled beyond dispute R. C. C. 2322. 670. 38 A. 280.

That of the master to his employees equally settled, and of a servant to his fellow servant, where the injury is traceable direct to the former, equally recognized. R. C. C. 2320. 37 A. 639 39 A. 551.

In line with this, the owners exoneration from liability for any such injury giving rise to damages has been equally maintained; where, from the proof administered or the contractual relations between the owner and third parties as contractors to whom such responsibility can be referred, it is apparent that such third parties, as to the owner, stand in the light of independent contractors. 32 A. 628. 29 A. 791. 28 A 944. 39 A. 1016.

Illustrative of the legal requirement to discharge the owner, see

No. 1583 Leondrix vs. H. Sophie Newcomb College, and Mechim on Agency, section 747, page 594, on principal's liability for acts of Independent Contractors.

It would be difficult to read the terms of contract quoted above and to infer therefrom that the defendant had retained such a contract of the work done by Cobb & Leblanc as to exculpate the latter and bind the former.

The terms of the contract show that if the supervision over the erection of the building was entrusted to defendant's architects, still he was deprived of the right either to employ labor (in the line of his contractors) or to enter and take possession of the contractor's works except under the conditions mentioned in the contract. Defendant's ground that Cobb & Leblanc were. as to him, independent contractors is, within the best appreciation, fully borne out.

But Cobb & Leblanc were each called in warranty by the defendant. Leblanc's exception of no cause of action, which was sustained by the lower court, is not appealed from. And his former partner, C. C. Cobb,, who was duly cited, did not appear, and no further procedings were taken against him.

The case should, in truth, terminate at the conclusion reached that Cobb & Leblanc were independent contractors; but, under defendant's denial that the accident, as alleged, was caused in any manner by his fault or negligence, or that of his agents, but was due to plaintiff's own negligence, reference to and consideration of the evidence of record are in point.

The scaffolding was erected under the direction of the foreman and a man experienced in this line, by the contractors Cobb & Leblanc.

Barrows loaded with bricks were hoisted to and landed by an elevator on this scaffolding from and upon which the barrows were wheeled to the bricklayers.

Now, the resume of the testimony for plaintiff is to the effect that the scaffolding was composed of only two planks; one of 1x12 the other of one-fourth less. That when the plaintiff moved forward with his loaded wheelbarrow and halted to deliver his bricks to the bricklayers, one of the planks (the outer one) sagged, and the plaintiff losing his balance was with his wheelbarrow precipitated below. .

Another of his witnesses says that, he noticed that one of these planks was lower than the other; and when ordered up, he refused to obey on account of the apparent dangerous condition of the scaffolding. That thereupon the plaintiff was ordered up and that, as the said witness had foreseen, the accident was the result of plaintiff's venture upon the scaffolding. Plaintiff and his witnesses agree in the statement that the scaffolding was composed of only 2 planks;

5

and that the wheel-barrow was rolled on only one of these, also, that the accident happened from the weight of the barrow and (supposedly) from the fact that to the barrow was added plaintiff's weight, who stood (while unloading) on the weaker plank.

On the other hand, defendant's witnesses assert that not only the scaffolding was made of three planks 1 x 12, as it is customary to errect said scaffolding, but that it would have been impossible to wheel the bricks on two planks only, because (and as it is inferred) the wheel would have rested on one plank only leaving the other free. Whereas with three planks the wheel would have traveled on the center one.

The witnesses further assert that plaintiff's unskillfulness in unloading his barrow, i. e. one side of it quicker than the other, caused the loaded side to keel the barrow over; and plaintiff, standing between the arms of the barrow, was struck on the legs by these arms and carried along in the fall of the barrow.

This testimony, which preponderates over that of plaintiff's witnesses does away with that tending to show the unequal size of the planks, the weakness of one of them, the insufficiency of the number of planks and the sagging of one of them.

For it is shown (and this is not rebutted) that the same scaffolding has been used before and was used after the accident with perfect safety for the same purpose, and that after completion of the work it was taken down with the greatest difficulty so cautiously and securely had it been built.

It further appears that the plaintiff was a laborer who had constantly worked on the ground. That when ordered up to the scaffolding he raised no objection, did not inform the contractors or their foreman that he was unskilled at such scaffolding work, and took upon himself the risk which he could have, and which one of his co-laborers, avoided. His inexperience at unloading a barrow of bricks at such an elevation should have been an incentive to a remonstrance on his part, for one of the witnesses says that, when he commenced his work on the scaffolding and commenced unloading the barrow, he watched him with interest and saw him unload the barrow so unevenly that (substantially stated) he expected the accident which followed.

We fail to detect any error in the decree of the Court a qua rejecting plaintiff's demand, and this decree is now affirmed.

DUFOUR, J. concurs on the ground that the acident was due to plaintiff's negligence.

October 13, 1903.

Rehearing refused November 9, 1903.

Writs of certiorari refused by Supreme Court Dec. 14, 1903.