(No. 2646. Jan. 13, 1922.)

## ADAMS et al. v. BLUMENSHINE.

### SYLLABUS BY THE COURT

Real estate, acquired by two husbands by deed to them as individuals, but who are at the time engaged in a partnership business in which the real estate is used, is nevertheless community property and subject to the rights of their respective wives therein, in the absence of evidence that the real estate was acquired as a firm asset, and that the same was required to pay off firm debts or to adjust equities between the partners. A contract to convey such land by the

two husbands alone, and in which the two wives did not join, will not be specifically enforced.

Appeal from District Court, Bernalillo County; Hickey, Judge.

Suit for specific performance by George H. Blumenshine against William H. Adams and others. Decree for plaintiff, and defendants appeal. Reversed and remanded, with directions.

Thos. J. Mabry, of Albuquerque, for appellants.

A. B. Stroup, of Albuquerque, for appellee.

## OPINION OF THE COURT

PARKER, J. This is a suit for specific performance of a contract for the sale of real estate. The facts are all stipulated, and may be briefly stated as follows:

W. H. Adams and Mrs. W. H. Adams were husband and wife on April 15, 1916. James L. Curd and Annie B. Curd were husband and wife on said April 15, 1916. In the year 1910 Curd and Adams began the operation of a dairy business as copartners under the firm name of Curd & Adams. There was no written partnership agreement, but they divided the profits and shared the losses equally. In 1912 the property involved was conveyed by one Ferguson and wife to the said James L. Curd and W. H. Adams as individuals, $600 of the purchase price of the land being paid; each of the said vendees contributing one-half thereof. They thereupon borrowed $2,000 with which they completed the payment of the purchase price, and this loan was afterwards paid in due course out of the income of the dairy business. From the time of the purchase of this property until the 15th day of April, 1916, the firm of Curd & Adams operated their dairy business

on the premises, and the two Adamses and the two Curds used the premises for their homes, neither family having any other homestead during all that time.    On April 15, 1916, Curd and Adams, "doing business as Curd & Adams," leased to one Miller and one Blumenshine, a partnership under the name of Miller & Blumenshine, the premises involved for a period of five years from that date, and covenanted with said Miller and Blumenshine that, upon the payment of $3,000 at any time within the term of the lease, they would execute and deliver a warranty deed for the premises.   This lease and contract to sell was not signed by the wives of said Curd and said Adams, and the women protested against the making of the said lease, and especially as to giving the option to buy the property, but no notice of said protest was ever brought home to said lessees. About April 1, 1916, the said Curd and Adams negotiated with said Miller and Blumenshine to sell their partnership dairy business, cows, equipment, and all personal property connected with said business, and also to lease the premises with an option to buy as heretofore mentioned.   Curd and Adams remained in possession of all of said personal property and said real estate until April 15, 1916, when the lease was executed and possession delivered to the said Miller and Blumenshine.   On said date the firm of Curd and Adams ceased to exist, except for the purpose of collecting the accounts due it.   The rent under said lease was thereafter paid and divided between the said Adams and Curd until the time of Curd's death in 1919, since which time Curd's share has been paid to his widow, the said Annie B. Curd. The said sale of the partnership property and the lease and covenant to sell the real estate in question was not made for the purpose of paying partnership debts, but was done simply in the course and at the time of closing out the partnership business.

It is stipulated by counsel that there is but one

question to be considered, and that is whether the real estate in question was partneship property, or whether it was the community property of the two families mentioned. The judgment of the court below was for specific performance of the contract to sell and convey, and the correctness of this judgment will turn upon the question, among other things, as to whether this real estate was partnership property or was community property.

In determining the question involved some general considerations will be first stated.

It may be said generally that a partnership, unaided by statute, cannot hold title to real estate. It is said by Mr. Parsons and others that the reason for this is that a partnership is not a person, and is consequently incapable of taking by deed. Parsons on Partnership (2d Ed.) p. 370.

Partners ordinarily hold real estate as tenants in common under a conveyance to them by name. 20 R. C. L., Partnership, § 56; Rowley, Mod. Law of Partnership, § 283.

The presumption is always against the inclusion in the firm assets of real estate held by the partners as tenants in common, and the presumption is that the ownership is where the muniments of title place it. 20 R. C. L. § 61; Goldthwaite v. Janney, 102 Ala. 431, 15 South. 560, 28 L. R. A. 161, 48 Am. St. Rep. 56, and note.

Real estate, however, may in equity be considered firm property, and will be so considered when such is the intention and agreement of the partners at the time of its acquisition. 20 R. C. L. § 61; Page v. Thomas, 43 Ohio St. 38, 1 N. E. 79, 54 Amer. Rep. 788, and note; Goldthwaite v. Janney, 102 Ala.

431, 15 South. 560, 28 L. R. A. 161, 48 Ann. St. Rep. 56, and note.

There need be no express agreement to that effect, it may be implied, but in every case there must be such an agreement. The intention or agreement of the partners may be evidenced by parol proof, and need not be in writing. 20 R. C. L. § 62; Goldthwaite v. Janney, 102 Ala. 431, 15 South. 560, 28 L. R. A. 161, 48 Am. St. Rep. 56, and note; Robinson Bank v. Miller, 153 Ill. 244, 38 N. E. 1078, 27 L. R. A. 449, 46 Am. St. Rep. 883, and notes; Johnson v. Hogan, 158 Mich. 635, 123 N. W. 891, 37 L. R. A. (N. S.) 889, and note.

Evidence of various kinds of facts is admissable to show such intention or agreement, such as the use to which the property is put, or the manner in which the accounts of the firm, in regard to the purchase price, are kept, and showing whether or not each partner's share of the purchase price is charged to him, or whether the item is carried as a firm item; whether the property was purchased with firm money, whether it was purchased for firm purposes, and perhaps other similar facts. R. C. L. §§ 62-65.

Where real estate, the title whereof is held by the partners as tenants in common, is in fact acquired as, and intended by the partners to be, partnership property, that result is effectuated by means of the doctrine of equitable conversion, whereby the land is treated as personalty for the purpose of paying the firm debts, and adjusting accounts and equities between the partners. The basis of the application of this doctrine is that a trust is implied for the benefit of the partnership. R. C. L. § 74; Adams v. Church, 42 Or. 270, 70 Pac. 1037, 59 L. R. A. 782, 95 Am. St. Rep. 740, and notes.

In England the doctrine of "out and out" equit-

able conversion—that is, that the real estate will be treated as partnership personalty for all purposes, even as against the right of dower and inheritance —is recognized both by decisions and later by statute. R. C. L. § 75.

In America, however, the doctrine of equitable conversion is recognized only so far as is necessary to effectuate the payment of the partnership debts and the adjustment of the equities between the partners, and when this has been done, all real estate, remaining in specie, assumes all of its characteristics as such and is subject to dower or other rights of the wife, and descends to the heirs as in ordinary cases. R. C. L. §§ 76, 77, 79; Adams v. Church, 42 Or. 270, 70 Pac. 1037, 59 L. R. A. 782, 95 Am. St. Rep. 740; Darrow v. Calkins, 154 N. Y. 503, 49 N. E. 61, 48 L. R. A. 299, 61 Am. St. Rep. 637, and note; Sieg v. Greene (C. C. A.) 225 Fed. 955, Ann. Cas. 1917C, 1006.

This doctrine does not exclude the right of the partners to agree upon an "out and out" conversion of the real estate into personalty, but in the absence of such agreement the doctrine prevails without exception.

This doctrine is necessarily sound. A partnership can really own no property. The property of the firm is owned by the members thereof. It is charged in their hands with an implied trust for the payment of the partnership debts and the adjustment of the equities between the partners. When these things have been accomplished, the partners own the property discharged of the trust, in the absence of an agreement to the contrary.

Applying some of these considerations to the facts in this case, it becomes apparent that the appellee, plaintiff below, cannot recover. The real

estate in question was purchased by the two partners in their individual capacity, each paying at the time $300 out of his individual funds. There is no evidence in the record that the partners at this time agreed or understood that the purchase was made for the partnership, or otherwise than as tennants in common. The partners gave a mortgage on the property in their individual capacities, and the mortgage was afterwards paid out of the profits of the dairy business in which the partners were engaged. There is no evidence in the record that these moneys were treated as firm moneys, or that they were not paid out as the individual moneys of the parties, share and share alike. It appears that the premises were used in carrying on the operations of the dairy business by the partners, but it likewise appears that each partner, with his wife, resided upon the premises, and used the same as his home, and that neither had any other home during the existence of the partnership. 'The use of the premises was as much for a homestead for these parties as for the conducting of the diary business, and such use for said last-mentioned purpose cannot, under the circumstances, be said to be controlling. The mere use of the property for firm business is only a slight circumstance tending to show that the premises were intended to be partnership property. R. C. L. § 62. The partnership was free from debt. There were no equities requiring adjustment between the partners when they determined to sell out their dairy business to the appellee and his then partner. They sold out the dairy business, and at the same time executed the lease and the covenant to sell and convey. The real estate had served all of its purposes as a trust estate for the payment of debts and the adjustment of equities, if any there should be, and it was then released from said trust, and assumed all of its characteristics as real estate. So, even if it did appear from the evidence, which as we have shown it

does not, that the partners intended and agreed, at the time they bought the land, that it should be partnership property, when the business of the partnership was closed up, it was released from the trust, and was reconverted into real estate to take its course as such and to be subjected to community property rights, descent, and distribution as in other cases. The only direct words in the record hinting at the fact that the real estate was considered by the partners as partnership property is in the recital in the lease and covenant that it was executed by "Curd and Adams, 'doing business as Curd & Adams.' " This recital cannot be deemed as sufficient evidence to show that these two partners had, at the time they purchased this property, agreed or understood that it was to be partnership property, or that they intended at the time of the making of the lease and covenant to then agree that it was to be considered partnership property, and to be converted into personalty for distribution as such, if, indeed, this could be done without the consent of the wives. The recital is to be held more properly to be merely a description of persons.

It follows that this real estate was not partnership property when acquired, and never became such, and, even if it had become such it was reconverted into real estate by the widing up of the affairs of the partnership, and that the right of the respective wives of the partners attached to the same as community property.

If the premises were community property, then it became necessary for both husband and wife to join in any deed conveying the same under the provisions of chapter 84, Laws 1915, and any transfer or conveyance of the same attempted to be made by the husband alone was void and of no effect. If a transfer or conveyance of the property by these husbands without their wives joining would be void

and of no effect, then a contract to make such a transfer of conveyance would likewise be void and of no effect, at least so far as specific performance of the contract is concerned.

It follows from the foregoing that there is error in the decree, and that the cause should be reversed and remanded, with directions to set aside the decree in favor of the appellants and against the appellee; and it is so ordered.

RAYNOLDS, C. J., and PARKER, J., concur.